## DISTORTION OF THE SCINTILLA RULE.

[Common Pleas Court of Cuyahoga County.]

HUGH S. QUAY v. JOHN J. QUAY ET AL.

Decided, January 29, 1906.

*Trial—Duty of Judge to Direct a Verdict, When—Evidence and Proof Distinguished—Scintilla Rule as Generally Understood and Applied a Misnomer.*

1. There is no place in our jurisprudence for the scintilla rule as that rule is commonly understood and generally applied.
2. When, at the close of plaintiff's evidence, defendant moves the court to direct a verdict, it is the right and duty of the judge to weigh the evidence in order to determine its probative force and effect. If the probative effect of the evidence be such that reasonable minds might reach different conclusions from it, the motion should be refused. But if the only rational view of the evidence is that it has not proved anything—if fair-minded men could not differ about it—the motion should be granted.

PHILLIPS, J.

Motion to direct a verdict.

This is an action to contest the validity of the will of Robert C. Quay, on two grounds: First, want of testamentary capacity; and second, the exercise of undue influence. The trial has proceeded in the statutory order, until the contestant has rested his case, and the defendants move the court to direct a verdict for them. On the argument of the motion, counsel for plaintiff abandons the second ground of contest—the exercise of undue influence—but contends that there is a scintilla of evidence in support of the other ground. The consideration of this motion calls for a determination of the legal effect of the evidence, under what is commonly known as the "scintilla rule."

I shall not speak of the evidence in detail, nor at length. The most that can be claimed from the evidence is, that some of it shows the testator to have been of weak mind. He certainly was eccentric; was doubtless below the average of intelligence, while some of the evidence shows him to have been of sound mind. The testimony of the only doctor that testified—and he had as

good opportunity to judge of his mental condition as any witness—is to the effect that he was of sound mind at the time he made this will.   Much of the testimony relates to times more or less remote from the time of the making of the will.   There is no evidence as to whether at the time he made his will he knew what property he had or that he did not know what property he had.   There is no evidence upon the question as to whether he knew who were his nearest relatives, and therefore the natural objects of his bounty.   There is no evidence bearing upon the question as to whether he understood what disposition of his property he was actually making.

Now, these are the criteria of testamentary capacity.   The will itself, so far as it may be considered upon this question, indicates nothing out of the ordinary in his capacity, or in the disposition of his property.   He had no wife living, and he had no children.   His nearest relatives were two brothers, parties litigant here, and he gave all of his property to these two brothers, in unequal portions.   Under the evidence there is scarcely ground for suspicion as to want of testamentary capacity; much less is there ground for a finding based upon proof.

If, under the law, the court may weigh this evidence—may consider its probative value and effect—it is clear that no rational view of this evidence would warrant the jury in finding for the plaintiff.   If, on the other hand, the court may not consider the probative value and effect of the evidence, then, I suppose, the case should go to the jury, that it may weigh the evidence, for, while there is no evidence directly bearing upon the elements of testamentary capacity, there is evidence tending to show mental capacity; and this, being admitted because it is competent upon the issue as to testamentary capacity, would properly be before the jury for consideration upon that issue, if the case should go to the jury.

To determine how far the proper functions of the judge extend in this matter, we must determine the meaning and effect of the rule under consideration.   I think I may safely say that there is, both with the bar and with the bench, a strong and growing sentiment against the scintilla rule, as it has been applied

generally by our courts; and I think there is a disposition on
the part of the courts to break away from it. The rule does not
obtain in England, it does not obtain in any of our federal courts,
and it obtains in only a very few of our state courts; but it has
always obtained in Ohio. There has been a somewhat general
outcry against it. The law publications have written against
it, judges have scolded about it, and I believe our state bar as-
sociation has more than once resolved against it. When the
matter was last before our Supreme Court, four of the judges
adhered to the rule, and the other two dissented in strong terms.
There can be no doubt that the scintilla rule, as it has been gen-
erally understood and applied, has worked a decided hindrance
to the speedy and effectual administration of justice in our
courts. I think the profession has come to regard this rule as
a relic that ought to be relegated. Of course, these considera-
tions do not affect the rule itself; but this consensus of the
legal and judicial mind, in which it is well known I have
to some extent shared, has induced me to give the subject a
somewhat careful consideration; and from such consideration,
I am well convinced that there is no place in our jurisprudence
for the scintilla rule, as it is commonly understood, and as it
is generally applied.

I will consider first, the object of the rule of procedure which
empowers the judge to control the jury by directing a verdict
upon the evidence. It must be borne in mind that this ques-
tion is presented in this case by the application of the defendant
to the court, to determine whether or not he should proceed
with his defense. The defendant virtually says to the court:

"I desire the judgment of the court now upon the present
state of the case. Has anything been shown on the part of the
plaintiff, he having put in all of his evidence, that changes the
situation, or that calls upon me to meet it with evidence, with
proof?"

This is a recognized practice; it has been recognized
in all time. The court is now confronted with that question,
and must determine it upon principles consistent with the rights
of both parties, and consistent with settled rules of procedure.

Courts are organized and maintained to determine real controversies, and only such real controversies as apparently have legal merit on both sides of the contention. To this end pleadings are required; to this end a censorship of the pleadings is provided, by motion and demurrer, to obtain, in advance of a trial, the judgment of the court as to whether there is a real controversy, having apparently legal merit on both sides. And whenever, during the trial, it appears to the court that there is no real controversy to be tried, the court may, and should, stop the trial. The court may exclude any and all evidence at the outset of the trial, on the ground that the plaintiff has not stated any right of action, has not come in with a complaint that entitles him to the intervention of the court. The court may arrest the case, perhaps, at any stage of it before it goes to the jury, and direct a verdict for the defendant, when it is clear that the plaintiff can not have a verdict rightfully. The court may arrest judgment after a verdict; the court may always stop the trial of a case when it appears in any way, when it comes to the knowledge of the court in any way, that the court has not jurisdiction, because the trial would necessarily be fruitless— because there is nothing to be tried; there is no real controversy before a real tribunal having jurisdiction over it.

A case was heard in this room within a few days, where the plaintiff was called to the stand, and from his own testimony it appeared that he was not the real party prosecuting the case. He did not have any law suit here; he was not in favor of it; he never had been in favor of it; he did not claim anything from it. A certain lawyer and a certain doctor had gone to him, he not understanding the English language, and procured him to make his mark to the petition. A motion was made to dismiss the case, and it was promptly dismissed. Now, there was more than a scintilla of evidence in that case, tending to prove the right of the plaintiff to damages that were claimed in the petition for him—more than a scintilla; but did that stand in the way of the court arresting the trial at that moment? It would have been a travesty of justice to proceed further with the trial. And so it is within the province of the court, and

it is the duty of the court, whenever it appears in the progress of a trial, when it appears with certainty, and of that the judge is to determine, that there is no real controversy. When it appears that there is nothing for the jury to try and to determine, the court ought to stop the trial; and this well accords with the judicial motive.

Plainly stated, this motion presents the question, whether this trial should proceed; and the propriety of proceeding further is challenged on the ground that it now appears that in no event can the party seeking relief obtain it rightfully. This is a question that is always pertinent; it is always germane to the trial; it is all the time impending. This challenge of the propriety of proceeding further is based upon the plaintiff's evidence. It presents the question whether, upon this evidence, a verdict can be given for the plaintiff. How given? Wrongfully given? Given by mistake? No; whether it can be rightfully given. The presumption must be, that the jury would return a right verdict on this evidence; but it certainly is both safe and fair to assume that if no rational view of this evidence would warrant a verdict for plaintiff, the jury could not find for him; and it is certainly fair to the plaintiff, in such state of the evidence, to arrest his case; and it accords well with the judicial motive to say to him:

"Since you have shown that you have no right to a verdict, you shall not be allowed to experiment with the jury, for no other purpose than to see if you can get from them something that it now appears you are not entitled to."

Such procedure would be the merest travesty of justice.

Such motion necessarily requires a consideration of the evidence; for it presents the question whether the plaintiff can rightfully have a verdict, first, as a matter of legitimate inference and deduction from the evidence, and second, as a matter of law. And in determining the former question, the thing to be determined is, not whether some witness has said something that would tend to sustain the plaintiff, but, what is the probative force and effect of this evidence? Such motion does not admit all that any witness has said—it concedes all the facts of which there is any appreciative degree of proof. It admits, not the evidence, not all

the facts that might possibly be surmised therefrom, but all the rational conclusions which the jury may rightfully and lawfully draw therefrom.

Having considered the purpose of the rule of procedure which empowers the judge to direct a verdict, and seeing that it requires a consideration of the evidence, with a view to determining whether any rational view of it will tend to the proof of plaintiff's ground of action, I come now to a consideration of the limitation placed upon the court, by another well-settled rule, that the weighing of the evidence, and the findings therefrom, belong exclusively to the jury.

The Supreme Court of the United States in an opinion delivered by Justice Swayne, in *Hickman* v. *Jones*, 76 U. S. (9 Wall.), 197, 201, says:

"The instruction given overlooked the line which separates two separate spheres of duty. Though correlative, they are distinct, and it is important to the right administration of justice that they should be kept so. It is as much within the province of the jury to decide questions of fact as of the court to decide questions of law. The jury should take the law as laid down by the court and give it full effect. But its application to the facts—and the facts themselves—it is for them to determine. These are the checks and balances which give to the trial by jury its value. Experience has proved their importance. They are indispensable to the harmony and proper efficacy of the system. Such is the law."

Justice Swayne says further:

"Where there is no evidence, or such defect in it that the law will not permit a verdict for the plaintiff to be given, such instructions may be properly demanded, and it is the duty of the court to give it. To refuse is error."

Nothing is better settled, and nothing is more essential to the trial by jury, than that the court shall not invade the province of the jury. And it is in the application of this doctrine, or rather, the misapplication of it, that the right of the judge to direct a verdict has been so hampered and limited by the scintilla rule, as to make that rule a means of retarding, rather than promoting, the speedy and efficient administration of justice.

This limitation requires us to distinguish between the facts that the judge may determine and those that belong exclusively to the jury.   And upon this point I read a part of 1 Jones Evidence, Section 171:

"It is a familiar rule that the judge has to determine all questions of law that arise in the trial of a case, and that the jury are to find the facts from the evidence introduced.   But as a matter of fact, judges frequently decide questions of fact and jurors apply the law as given by the court to the questions of fact involved.   The jury decides upon the weight of the evidence and upon the credibility of the witnesses, the judge passes upon the competency of the witnesses and upon the admissibility of the evidence offered.   The sphere of the jury as compared with that of the judge is a limited one.   The judge in a large degree controls and guides the action of a jury from the beginning to the end of the trial.   The work of the jury is confined to the determination of the ultimate facts which are the subject of the issue.   The preliminary issues of facts that arise during the trial are, with few exceptions, determined by the judge."

As I have shown, this question that is presented by a motion to direct a verdict, is a preliminary question.   It arises during the course of the trial.   It is preliminary to the introduction of evidence on the part of the defendant.   It is as purely preliminary and distinct from the final decision upon the issues in the case by the jury as any other well-known preliminary part of the proceeding.   The jury is to decide the issues; and, of course, they can do this only when more than one rational conclusion can be drawn from the evidence, for only in such case could there be anything to decide.

The drawing of rational conclusions from evidence, appeals to a standard of judgment that belongs to the man of average intelligence, when free from bias.   And this standard belongs to the court, as well as to the jury.   The jury has no monopoly of it, and the court has no monopoly of it.   The judge, in passing upon a motion to direct a verdict, deals with a preliminary question; and he can arrest the case from the jury only when the only rational view of the evidence is, that it shows there is nothing to be decided by the jury.

The jury decides according to the prepondenance of the evidence—the court can not do this.    There must be only . one rational conclusion that can be drawn from the evidence to authorize the judge to interfere.    If different minds might reach different conclusions, it must go to the jury; for then there is some doubt about it—there is then a chance that  the judge might go wrong.    But if there is only one rational conclusion from the evidence, the judge can not go wrong, and his interference does not impinge upon the functions of the jury.    He decides, as he alone can decide, that there is nothing to invoke the functions of the jury, for there is no evidence that will enable them to decide the issues.

I think the courts have been led to a wrong interpretation, and a wrong application of this rule, by a confusion of terms.    The terms "evidence" and "proof" are very commonly confused by all of us.    They have different meanings.    They must be distinguished, and especially in the consideration of this rule must they be distinguished, and it is the failure to distingush between them' that I think has led to a wrong application of this rule—indeed, to a wrong formulation of it.

Evidence means whatever tends to prove or disprove a fact in issue.    It includes testimony—and by testimony I mean the oral statement of the witness, whether from the witness stand, or in deposition—and it includes as well records and writings, or exhibits.    This is all evidence.    Proof is the result of evidence. It results as the probative effect of evidence, and it is the conviction or persuasion of the mind resulting from a consideration of evidence.

The rule under consideration has to do with the proof, and not with the evidence.    It is only when the probative effect of evidence is to make some proof tending to support the plaintiff's claim that he is entitled to have the jury pass upon it.    Not until then is the defendant called upon to introduce any evidence; not until then is there anything for him to meet with his evidence.

The courts have, in the application of this rule, confounded, ·or have not always distinguished, evidence and proof; and, there·

fore, have applied the rule where there was some evidence, regardless of the probative effect of the evidence, declining to weigh it, leaving it to the jury. I think it unfortunate that the term "scintilla" was adopted in the formulation of this rule. It can have no possible application to the principles involved in the rule. Scintilla is a pure Latin word and means literally, a spark, a glimmer. Its figurative meaning is, the least conceivable particle, a trace. Nothing could be minimized more effectually than to apply to it this term "scintilla" in either its literal or its figurative sense.

Now, by giving controlling effect to this word "scintilla," which is only used figuratively, and by applying it to the evidence, instead of to the proof, the rule has been distorted to mean, that where there is the slightest particle of evidence tending to make proof for the plaintiff, the court can not interfere, and this has restrained the courts from weighing the evidence upon such motion. I think this confusion of terms is apparent in the formulation of this rule made by the very distinguished jurist, Judge Ranney. In the case of *Ellis* v. *Insurance Co.*, 4 Ohio St., 628, 645, he says:

"When all the evidence offered by the plaintiff has been given, and a motion for a non-suit is interposed, *a question of law* is presented, whether the evidence before the jury *tends* to prove all the facts involved in the right of action, and put in issue by the pleadings. In deciding this question, no finding of facts by the court is required, and no weighing of the evidence is permitted. All that the evidence in any degree *tends* to prove must be received as fully proved."

With the greatest deference to Judge Ranney, I think he has fallen into the error that I have been trying to point out.

I now call attention to some Ohio cases which I think show the trend of opinion in our Supreme Court to be in the direction of what I have been saying.

First, I call attention to the case of *People's & Drovers' Bank* v. *Craig*, 63 Ohio St., 374. One paragraph of the syllabus is:

"When the controlling facts are conceded on the trial, it is not error for the court to direct the jury to bring in a verdict in accordance with such facts."

Now, the entire function of the jury, as I have shown before, is to weigh the evidence and determine the facts, and then to apply the law that the court gives to the facts; so that it is a part of the function of the jury to make application of the law to the ascertained facts. But when the facts are conceded, when there are no facts to be determined by the jury, then so much of the function of the jury is eliminated, and the court can as well apply the law to the settled facts, or ascertained facts, or conceded facts, as the jury can, and our Supreme Court has held that it is no invasion of the province of the jury in that condition of case, for the court to determine that matter and make the application of the law to the facts. The full function of the jury is not invoked, and the court can as well, if not better, make the application, as the jury.

There is a case decided by our circuit court, Hale, Marvin and Laubie, Judge Laubie delivering the opinion, *Cleveland Elec. Ry.* v. *Wadsworth,* 1 C. C.—N. S., 483. The second paragraph of the syllabus is in these words:

"Where the only rational conclusion from the evidence in an action for personal injuries is, that the plaintiff's negligence contributed to his injury, the case should be taken from the jury and judgment rendered for the defendant."

Upon a motion of this kind, there is a clear and explicit recognition of the right of the judge to weigh the evidence, where the only rational conclusion from the evidence is, that the plaintiff was negligent. How is that to be determined except by weighing his evidence? The court can not balance the matter; the court can not determine that by a mere preponderance of the evidence. If it presents that kind of question, it must go to the jury, because when it presents that kind of question, the plaintiff is entitled to have the verdict of the jury upon it, because different minds may differ about it. But when there is no rational conclusions from the weighing of the evidence but that the plaintiff was negligent, and that his negligence contributed to the injury he complains of, there is nothing to go to the jury. In determining that question, of course, the court must find the probative value and effect of the plaintiff's evidence.

In the case of *Cincinnati St. Ry.* v. *Snell*, 54 Ohio St., 197, the Supreme Court states the negative of the rule that I have just read from our circuit court decisions. The fourth paragraph of the syllabus is:

"Where the evidence of the plaintiff shows actionable negligence on the part of the company, and the question of contributory negligence of the plaintiff depends upon a variety of circumstances from which different minds may reasonably arrive at different conclusions as to whether there was contributory negligence or not, the question should be submitted to the jury under proper instructions; and it is error in such case for the court to direct a verdict for the defendant."

In *Nelson Business College Co.* v. *Lloyd*, 60 Ohio St., 448, 459, Judge Minshall, in discussing this question, says:

"But it must be observed, that this is the inference the defendant would have drawn from the evidence; but, certainly, an impartial mind may draw from it the former conclusion; and this shows that, from the same evidence, different minds may draw different conclusions—one favorable, and the other unfavorable, to the claim of the plaintiff; and hence the evidence should have been submitted to the jury under proper instructions as to the law."

Then Judge Minshall says:

"This is the proper rule in determining whether a verdict should be directed in any case. The so-called 'scintilla rule,' frequently applied as a stigma to the practice that requires the case to be submitted to the jury when there is any evidence to support the plaintiff's case, is better calculated to confuse than enlighten the mind."

A good statement of the doctrine, as I think it is, is to be found in 1 Jones, Evidence, Section 171, where the author says:

"It is also in the province of the judge to determine whether there is sufficient evidence in the case to warrant its submission to the jury. If there is such evidence as would cause reasonable men to draw different conclusions, the case should be submitted to the jury. But a mere scintilla of evidence, or mere surmise, will not sustain a refusal on the part of the judge to take the case from the jury and to grant a non-suit. The recent decisions have extended the province of the judge in such cases, and have completely exploded the old doctrine by which a judge was

compelled to submit the case to the jury if there was a scintilla of evidence to support the claim of the plaintiff.

"In place of the old rule has come the more reasonable one, that in every case there is a preliminary question for the judge, whether there is evidence upon which the jury may properly proceed to find a verdict when the evidence with all the inferences that the jury can justifiably draw from it is insufficient to support a verdict for the plaintiff, it is the duty of the court to take the case from the jury and to direct a verdict, or grant a non-suit as the facts of the case may warrant. It is proper for the court to so instruct the jury, when the evidence has been too loose and inconclusive, to establish the facts sought to be proved without indulging in mere conjecture or speculation. But the judge should not in so doing encroach upon the province of the jury by dictating or influencing their verdict when there is any sufficient evidence which tends to show that there are two sides to the controversy."

I read now from *Cincinnati St. Ry.* v. *Snell, supra,* the part of the dissenting opinion of Judge Shauck, concurred in by Judge Burket, which relates to this question. Be it borne in mind that the majority of the Supreme Court find that the trial judge did wrong in arresting the case from the jury. These dissenting judges say, page 213:

"The course of the trial judge in this case is worthy of commendation. Having devoted enough time to the orderly examination of the case to disclose a conclusive reason why the plaintiff could not recover a verdict according to law, he directed the verdict which, the law required. The plaintiff had no constitutional or legal right to recover a verdict upon which he could not recover a judgment. Had the case been submitted to the jury upon general instructions, the court would not have been sitting to administer justice, but to experiment with a verdict. Such a course was required by no right of the plaintiff. It was forbidden by justice to the defendant and by a due regard for the rights of the public in a speedy administration of justice."

I conclude, that when, in a civil action, the plaintiff has introduced his evidence and rested, and the defendant moves the court to direct a verdict for him, the court is called upon to determine whether the situation of the case is such that the defendant is called upon to introduce any evidence. Stated differently, the court is called upon to say whether the evidence

for the plaintiff has changed the situation. Stated in fewer words, has the plaintiff proved anything? If the plaintiff, having the burden, has not proved anything, there is no occasion for the defendant to offer evidence, for there is nothing for him to prove or disprove, and he is entitled to a verdict, just as if the plaintiff had offered no evidence; for evidence does not avail, unless it proves something—under this rule, it is proof that avails, and not mere evidence.

To determine whether anything has been proved, the court must consider the evidence to ascertain its probative force. This is weighing the evidence, and this the court must do, for there is no other way of determining the question with which the court is confronted.

But if, upon such consideration of the evidence, the question of proof or no proof is in any appreciable degree doubtful; if the state of the evidence be such that different minds might differ about it, then the plaintiff's evidence has changed the situation, and the defendant is called upon to make some proof, and the trial should go on. This is so, for this reason: The parties having made up an issue worthy of trial by jury, and having entered upon a trial to a jury, each is entitled to have it proceed to the jury, until it shall appear that there can be nothing for the jury to decide; and if the probative effect of the plaintiff's evidence is such that different minds might differ about it, he has made so much of a case that he is entitled to a verdict upon a preponderance of the evidence, and this invokes a function of the jury. But, on the other hand, if the only rational view of the evidence is that it has not proved anything —if fair-minded men could not differ about it—it can in no way affect the issue, and should not be submitted to the jury, for the jury deals only with the issues.

I have received these views with some trepidation, for some may regard my position as one of insubordination. I realize full well the duty of an inferior court in this regard. I have no intention to fly in the face of the Supreme Court, and I think I have not done so. I have followed what seems to me the invincible and inexorable logic of the situation; and if I am not

mistaken, my conclusions have at least the *quasi* sanction of what seems to me the certain trend of opinion in that court.

Motion granted, and verdict directed.

*M. B. Excell,* for plaintiff.

*W. L. Clark,* for defendants.